SALWAY *v.* SECRETARY OF STATE.

1. Statutes—Construction—Revocation of Licenses.
    Where the legislature amends an existing section of a statute relative to revocation of licenses and adds another section to the same statute also pertaining to suspension or revocation of same licenses but worded differently, the new section must be read in conjunction with the amended one and it may not

References for Points in Headnotes

[1] 50 Am. Jur., Statutes, §§ 275, 468, 469, 552.
[1–14] Statutes or ordinances licensing or otherwise regulating business of selling motor vehicles. 126 A.L.R. 740.
[2–5, 8, 9, 12] 33 Am. Jur., Licenses, §§ 60–63.
[11, 13] 33 Am. Jur., Licenses, §§ 59–64, 66.

be assumed it was intended that each should have identical meanings (Act No. 46, §§ 14, 14f, Pub. Acts 1921, as amended and added by Act No. 151, Pub. Acts 1943).

2. LICENSES—AUTOMOBILE DEALERS—REFUSAL TO ISSUE A LICENSE.
   Under the motor-vehicle title act the secretary of State is authorized to refuse to issue a license to a dealer after a notice and hearing without a verified complaint having been filed by a third person and an investigation held thereon (Act No. 46, §§ 14, 14f, Pub. Acts 1921, as added and amended by Act No. 151, Pub. Acts 1943).

3. SAME—ATTORNEY GENERAL'S VERIFIED COMPLAINT.
   Where proceeding to suspend or revoke used-car dealer's license was commenced by secretary of State, and an unverified complaint of a third person, was later filed and some testimony taken and certain exhibits incorporated into record, the subsequent intervention and filing of a verified complaint by the attorney general is disregarded where no proceedings were taken on his complaint (Act No. 46, §§ 14, 14f, Pub. Acts 1921, as added and amended by Act No. 151, Pub. Acts 1943).

4. SAME—USED-CAR DEALERS—NOTICE AND HEARING ON SUSPENSION OR REVOCATION—VERIFIED COMPLAINT—SECRETARY OF STATE.
   Notice and hearing on revocation or suspension of plaintiff's used-car dealer's license were not affected nor rendered a nullity by fact that although notice referred to "a verified complaint" as having been filed, the complaint filed was not verified, where notice given dealer properly advised him of the nature of the charge against him, as the secretary of State may hold an investigation, give notice and conduct a hearing on his own initiative under the motor-vehicle title act (Act No. 46, §§ 14, 14f, Pub. Acts 1921, as added and amended by Act No. 151, Pub. Acts 1943).

5. APPEAL AND ERROR—REVOCATION OR SUSPENSION OF LICENSE—SCOPE OF REVIEW OF EVIDENCE.
   Review by the Supreme Court of action of the secretary of State in revoking or suspending of a dealer's license under the motor-vehicle title act embraces a consideration of the evidence to see if it supports the finding on which his order is based but not a weighing of the evidence (Act No. 46, §§ 14, 14f, Pub. Acts 1921, as added by Act No. 151, Pub. Acts 1943).

6. AUTOMOBILES—"NEW" CARS—"USED" CARS—DEALERS—CONSTRUCTION OF STATUTES.
   Under the motor-vehicle title act the legislature intended to differentiate between "new" and "used" cars and between dealers

therein and to use the terms in the ordinary, as distinguished from a technical, sense (1 Comp. Laws 1929, § 4658, as amended by Act No. 272, Pub. Acts 1945).

**7.** LICENSES—USED-CAR DEALERS—SALE OF "NEW" CARS—EVIDENCE.
Evidence, showing dealer licensed to sell "used" cars, advertised and sold cars merely "titled" in a private name as "new" cars, *held*, to support finding of secretary of State that he had sold "new"? cars without having been licensed to do so and in violation of motor-vehicle title act (Act No. 46, § 1, Pub. Acts 1921, as amended by Act No. 272, Pub. Acts 1945; §§ 14, 14f, as amended and added by Act No. 151, Pub. Acts 1943).

**8.** SAME—SUSPENSION OR REVOCATION—GOOD CAUSE.
Under the motor-vehicle title act, whatever would constitute good cause for denying a license to a dealer in the first instance should be considered "good cause" for the suspension or revocation of a license (Act No. 46, §§ 14, 14f, Pub. Acts 1921, as amended and added by Act No. 151, Pub. Acts 1943).

**9.** SAME—USED-CAR DEALER—SALE OF NEW CARS—SUSPENSION OR REVOCATION OF LICENSE.
Since engaging in the business of selling new motor vehicles at retail without having authority of a contract with the manufacturer or distributor therefor necessitates refusal of a license to a dealer, it must be regarded as sufficient cause to justify a suspension or revocation thereof (Act No. 46, §§ 14, 14f, Pub. Acts 1921, as amended and added by Act No. 151, Pub. Acts 1943).

**10.** AUTOMOBILES—DEFINITION OF "NEW" CARS.
A "new" motor vehicle, as the term is used in the motor-vehicle title act, is one that has not become used or secondhand within the meaning of the act (1 Comp. Laws 1929, § 4658, as amended by Act No. 272, Pub. Acts 1945).

**11.** SAME—TITLE ACT—DELEGATION OF POWERS.
In the motor-vehicle title act the legislature has clearly indicated the purpose sought to be accomplished thereby, outlined the procedure to be followed, provided the standards or tests to be used and charged the secretary of State with the exercise of certain powers, properly delegable to him, and performance of duties, specifically vested in him, but does not permit him to indulge in any arbitrary definition of terms (1 Comp. Laws 1929, § 4658 *et seq.,* as amended).

**12.** OFFICERS—DISCRETION—RULES AND REGULATIONS.
The legislature may confer authority on an administrative officer or board to make rules, within limits defined in the law, as to

details, to find facts and to exercise some discretion in the administration of a statute.

13. CONSTITUTIONAL LAW—DELEGATION OF POWERS—SECRETARY OF STATE—LICENSES TO CAR DEALERS.

Provisions of motor-vehicle title act empowering secretary of State to refuse, revoke or suspend dealers' licenses *held*, not to have vested such officer with an unwarranted and arbitrary power, when construed in the light of the general purpose of the act although he must make a determination of facts pursuant to standards clearly indicated by statute (Act No. 46, §§ 14, 14f, Pub. Acts 1921, as amended and added by Act No. 151, Pub. Acts 1943).

14. COSTS—PUBLIC QUESTION—USED-CAR DEALER'S LICENSE—SALE OF NEW CARS.

No costs are allowed on appeal from secretary of State from order suspending used car dealer's license for selling new cars without license so to do, the question involved being one of public interest (1 Comp. Laws 1929, § 4658 *et seq.*, as amended).

Appeal from Secretary of State. Submitted January 15, 1948. (Docket No. 49, Calendar No. 43,866.) Decided May 18, 1948.

Hugh D. Salway appeals from an order of Fred M. Alger, Jr., Secretary of State, suspending his used-car dealer's license for 90 days. Affirmed.

*Harry F. Kelly* and *Albert W. Dimmers,* for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Maurice M. Moule* and *Ben H. Cole,* Assistants Attorney General, for defendant and Attorney General as intervenor.

CARR, J. For several years past plaintiff has carried on within this State the business of buying and selling motor vehicles, having been licensed to do so under the provisions of the statute regulating such

business.   Following notice and hearing his license
was suspended for a period of 90 days by the secre-
tary of State, and plaintiff, on leave granted, has
prosecuted this appeal in the nature of certiorari.
The order in question was dated August 21, 1947,
and became effective, subject to certain expressed
conditions not material at this time, on September
15th, following.

The suspension of the license was based on the
finding that plaintiff, without being authorized to do
so under such license, had purchased and sold new
automobiles in his business.   The controversy in-
volves the interpretation and application of provi-
sions of the motor-vehicle title act of this State, Act
No. 46, Pub. Acts 1921 (1 Comp. Laws 1929, § 4658
*et seq.* [Stat. Ann. § 9.1471 *et seq.*]), as last amended
by Act No. 151, Pub. Acts 1943, and Act No. 272, Pub.
Acts 1945 (Comp. Laws Supp. 1945, § 4658 *et seq.,*
Stat. Ann. 1946 Cum. Supp. § 9.1471 *et seq.*).   Section
14 of said act was further amended by Act No. 250,
Pub. Acts 1947, but said amendatory act, which be-
came effective October 11, 1947, is not material in the
determination of the issues here involved.

Various provisions of the act indicate a legislative
intent to differentiate between dealers selling new
automobiles and those engaged solely in business as
used-car dealers.   Section 14e directs the secretary
of State to adopt some method "to segregate new
car dealers, exclusive used car dealers, junk dealers,
et cetera, on his records."   Section 14, in providing
for the issuance of a license, makes reference to sec-
tion 14e which in terms requires that, if new motor
vehicles are to be sold, the application shall set forth
the make or makes to be handled and each dealer
shall accompany his application for a license with an
affidavit "swearing to the fact that he holds a bona
fide contract to act as factory representative" for the
sale of a specified make of car.   Section 14f further

requires the secretary of State to refuse to issue a license to any applicant the secretary finds "is engaged or will engage in the business of selling at retail any new motor vehicles without having authority of a contract with a manufacturer or distributor thereof." No claim is made in the instant case that plaintiff had such a contract. The license which he held permitted him to engage in the sale in his business of used cars only.

As the basis for the order made by him, the secretary of State filed findings of fact and conclusions of law, stating therein that, on the receipt of information that plaintiff was offering for sale and selling new automobiles, an investigation was instituted. Thereafter a complaint against plaintiff was submitted to the secretary of State by the executive secretary of the Michigan Automobile Dealers Association. Said complaint purported to set up facts concerning plaintiff's operations, and submitted in connection with it were advertisements inserted by plaintiff in certain newspapers circulating in the community in which his business was conducted. Statements contained in such advertisements indicated that plaintiff was offering new cars for sale. Thereafter a notice was served on plaintiff by the secretary of State, reciting that a "verified complaint" had been filed against him charging a violation of section 14f, paragraph (c), of the motor-vehicle title act.

It is conceded that the reference in the notice was to the complaint above mentioned. As a matter of fact, said complaint was not verified, although attached to it was a certification by a notary public that it had been signed in his presence. On the hearing the right of the secretary of State to proceed was challenged on the ground that there was no properly verified complaint before him. However, the testimony of plaintiff was taken and certain exhibits were

incorporated in the record for the purpose of showing the facts with reference to sales by him of new automobiles. Following the introduction of the proofs the attorney general intervened in the case and filed a verified complaint against plaintiff. This was done over objection. An offer to continue the hearing in order to give plaintiff further time to make such showing as he desired was not accepted. The order for the suspension of the license followed.

The first question for consideration arises from the claim of plaintiff that the secretary of State was not authorized to act except on the basis of a properly verified complaint. Section 14f of the act contains the following provision:

"The secretary of State shall, upon a verified complaint in writing of any person, investigate the conduct of any licensee and shall suspend or revoke or refuse to renew any license if investigation proves that licensee has not complied with all or certain sections of this act."

This must be read in conjunction with other provisions of the act, particularly the following clause from section 14:

"The secretary of State shall be authorized, after a hearing, notice of which shall be given 10 days in advance, for good cause shown, to revoke the license of any motor vehicle dealer or to refuse to issue a license as provided in section 14f of this act."

It is significant to note that the above language in section 14 was enacted in the form quoted in Act No. 151, Pub. Acts 1943, by which act section 14f was added to the statute. It may not be assumed that the legislature intended these provisions to have identical meanings. It was clearly the purpose to authorize the secretary of State to proceed on his own initiative in a proper case, and to require him to make an investigation on the filing of a verified complaint containing charges that a licensed dealer

has not complied, or is not complying, with the provisions of the motor-vehicle title act. The reference to a refusal to issue a new license, contained in the provision quoted from section 14f, would seem to leave no serious question in this regard. Obviously it was the intention of the legislature that the secretary of State may, following notice and hearing, refuse to issue a license without a verified complaint having been filed by a third person and an investigation held thereon.

As before noted, the findings filed by the secretary of State recited that an investigation into plaintiff's alleged activities had been started prior to receipt of the communication from the executive secretary of the Michigan Automobile Dealers Association. Such investigation was authorized by the statute. The unverified complaint, subsequently filed, served merely to furnish additional information. It is not questioned that the notice served on plaintiff properly advised him of the nature of the charge against him. The reference therein to "a verified complaint" did not affect the notice or the subsequent hearing held thereon. No proceedings were taken on the complaint of the attorney general. It has no bearing on the issues in the case and may be disregarded. Under the provisions of the statute the secretary of State was empowered to hold an investigation, give notice, and conduct a hearing on his own initiative. From a legal standpoint that is precisely what was done in the instant case. Plaintiff's claim that the order from which he appeals is a nullity because no verified complaint was filed with the secretary of State prior to notice and hearing cannot be sustained.

Plaintiff further claims that the evidence introduced on the hearing before the secretary of State was not sufficient to support the order for suspension

of the license.   In section 14f of the motor-vehicle title act it is declared that:

"The findings of fact made by the secretary of State acting within his power shall, in the' absence of fraud, be conclusive, but the Supreme Court shall have power to review questions of law involved in any final decision or determination of the secretary of State: Provided, That application is made by the aggrieved party within 30 days after such determination by any method permissible under the rules and practice of said court or the laws of this State, and the Supreme Court shall be authorized to make such further orders in respect thereto as justice may require."

In his findings filed at the conclusion of the hearing the secretary of State said:

"The testimony of Mr. Salway shows that on three successive occasions he advertised for sale several automobiles.   He said in his prominent newspaper advertising: 'These are absolutely brand new automobiles.'   His testimony discloses that these cars were actually sold by him, and he offered no proof that they were 'used' beyond showing that they had been 'titled' to a private name  before acquisition thereof by him.   The cars so offered and sold were in fact what he represented them to be—'absolutely brand new,' and Mr. Salway, an 'exclusive used car dealer,' has thus unlawfully engaged in the business of selling new cars without having obtained either a manufacturer's franchise (14e) or a license from this office so to do (14f)."

Under the provision of section 14f of the statute, above quoted, we do not weigh the evidence.   We consider it solely for the purpose of determining if it supports the finding on which the order is based. *Powers* v. *Secretary of State,* 312 Mich. 315; *G. F. Redmond & Co.* v. *Michigan Securities Commission,* 222 Mich. 1.   The inquiry is, in consequence, whether

the evidence in the record was sufficient to justify the factual finding set forth in the language quoted.

In an advertisement in the Hillsdale Daily News under date of April 22, 1947, plaintiff described cars offered for sale by him as "absolutely brand new automobiles." One of the cars, he stated, was "delivered by local Plymouth dealer 28 hours ago." The second was claimed to have "50.9 actual miles." The third was listed as "another fine new automobile." In another advertisement in the same paper on April 25, 1947, an automobile was described as "brand new this week from local Plymouth dealer." On May 2, 1947, plaintiff advertised for sale a certain car, stating he "made a scoop" by purchasing it "one day before it was delivered to private party from local Hillsdale Plymouth dealer." As stated by the secretary of State in his finding the testimony of plaintiff disclosed that the cars referred to in the advertisements were offered for sale and sold by him. There is nothing in the record to suggest that the description of the cars was not accurate. Plaintiff does not contend that he was guilty of false advertising.

Section 1, paragraph (e), of the motor-vehicle title act defines the term "used vehicle" as "A motor vehicle which has been sold, bargained, exchanged, given away or title transferred from, the person who first took title to it from the manufacturer or importer, dealer or agent of the manufacturer or importer, and so used as to have become what is commonly known as 'second hand' within the ordinary meaning thereof." The definition suggests a line of demarcation between new and used automobiles. It is apparent that in the statute in question the legislature did not use either term in a technical sense but rather with the intent that each should be given its ordinary meaning. Obviously, it was the purpose to differentiate between new and used cars and, as before noted, between dealers therein. The definition

of a used vehicle clearly implies that a new automobile must be regarded as one that has not been so used as to have become second hand in the ordinary acceptance of the term. Whether in a given instance a motor vehicle, title to which has been transferred by the manufacturer or importer, or by a representative thereof, has been so used becomes an issue of fact. The evidence before the secretary of State in the instant case tended to show that the specified motor vehicles described by plaintiff in his advertisements as "new" were correctly classified. In other words, they had not been used in such manner or to such extent as to render them second-hand cars. We conclude that there was evidence before the secretary of State to support the finding on which the order was based.

This brings us to a consideration of the further question whether the facts so found constituted "good cause" for the suspension of plaintiff's license within the meaning of the term as used in the provision hereinbefore quoted from section 14 of the motor-vehicle title act. Said provision specifically refers to section 14f which sets forth the grounds on which the secretary of State is required to deny an application for any license. It is a logical conclusion that the legislature had in contemplation that whatever constituted a reason, or reasons, for denying a license in the first instance should be considered "good cause" for the revocation of a license. Since engaging in the business of selling new motor vehicles at retail without having authority of a contract with the manufacturer or distributor therefor necessitates refusal of a license, it must be regarded as sufficient cause to justify a suspension or revocation.

It is argued also on behalf of plaintiff that if the provisions of the motor-vehicle title act defining the powers and duties of the secretary of State with reference to licenses are construed as authorizing that

official to determine in any instance whether particular motor vehicles are new or second hand, such provisions are unconstitutional because attempting to make an unwarranted delegation of power to an administrative officer. The argument rests on the theory that the statute provides no legal test that may be applied to determine in a given instance whether a motor vehicle should be classified as new or as used, and that in consequence the secretary of State is not only required to determine the fact but to provide his own standard in so doing. With this contention we are unable to agree. We think the legislature has clearly indicated the meaning to be given to the term "used vehicle." By necessary implication a new vehicle is one that has not become used or second hand within the meaning of the statutory definition. As before noted, the terms in question must be given their ordinary significance. In refusing to issue a license, or in revoking a license previously issued, the secretary of State must be governed accordingly. He is not at liberty, as plaintiff implies, to indulge in any arbitrary definition of terms. The statute does not attempt to grant him authority to do so. Rather the legislature has clearly indicated in the provisions of the statute the general purpose sought to be accomplished thereby, and has outlined the procedure to be followed in effectuating that purpose. To that end the secretary of State is charged with the exercise of certain powers and the performance of duties specifically vested in him.

In *Warnshuis* v. *State Board of Registration in Medicine,* 285 Mich. 699, the Court had under consideration a statutory provision authorizing the defendant board to refuse to issue or continue a certificate of registration or license to any person guilty of "grossly unprofessional and dishonest conduct." The phrase quoted was declared to mean, among other

things, advertising in which "grossly improbable statements are made." Under said statute the determination as to what constituted a "grossly improbable statement" was left to the board. It was contended that the provision authorizing revocation or suspension of a license because of such advertising was unconstitutional and void on the ground that an attempt had been made by the legislature to vest the defendant board of registration with arbitrary power. In support of such contention it was argued that the result of the statute was to leave the determination of the question whether the statements in an advertisement in a particular instance were grossly improbable "to the varying opinions and views of the board." The act was upheld, however, this Court saying in part:

"In our opinion the terms used in the statute have a definite and well recognized meaning. It would be quite impossible for the legislature to enumerate all of the specific statements which might be grossly improbable. The determination of what constituted 'grossly improbable statements' can best be left to those who have the education and experience, such as the medical board. Such delegation of power is properly vested in the State board of registration in medicine."

In *Argo Oil Corp.* v. *Atwood,* 274 Mich. 47, it was said:

"It is too well settled to need the citation of supporting authorities that the legislature, within limits defined in the law, may confer authority on an administrative officer or board to make rules as to details, to find facts, and to exercise some discretion, in the administration of a statute."

See, also, *In re Van Hyning,* 257 Mich. 146; *Milk Marketing Board* v. *Johnson,* 295 Mich. 644; *Toole* v. *Michigan State Board of Dentistry,* 306 Mich. 527;

*Ranke* v. *Corporation & Securities Commission,* 317 Mich. 304.

Under the general principles announced and applied in the above cited cases and other decisions of like import, the conclusion follows that the provisions of the motor-vehicle title act, here in question, defining the powers and duties of the secretary of State with reference to the refusal and revocation of licenses to dealers, are not invalid for the reason urged by plaintiff. Such provisions, construed in the light of the general purpose of the legislature in the enactment of the statute, do not attempt to vest unwarranted and arbitrary power in an administrative officer. It is true that the performance of the duties imposed on him requires the secretary of State to determine facts, but the standards to be observed in such determinations are clearly indicated by the statute. Those standards were observed in the instant case. On the record before us it cannot be said that the secretary of State acted arbitrarily or without proper statutory authority. *Powers* v. *Secretary of State, supra.*

The order suspending plaintiff's license is affirmed. The question involved being of public interest, no costs are allowed.

Bushnell, C. J., and Sharpe, Boyles, Reid, North, Dethmers, and Butzel, JJ., concurred.