Stanley G. BANDEEN, Appellant,

v.

E. M. HOWARD et al., Appellees.

Court of Appeals of Kentucky.

Oct. 5, 1956.

Rehearing Denied Feb. 22, 1957.

**250**

Blakey Helm, Louisville, for appellant.

Martin R. Glenn, John P. Godfrey, Jr., and Wyatt, Grafton & Grafton, Louisville, for appellees.

STEWART, Judge.

Stanley G. Bandeen filed this suit in the Franklin Circuit Court seeking to enjoin the State Board of Health of Kentucky (herein referred to as "the Board") from enforcing its order revoking his license to practice osteopathy in Kentucky. The circuit court denied the injunction and Bandeen appeals, urging these grounds for reversal: (1) The Board had no jurisdiction of the case; (2) there was no evidence to support the Board's order; (3) its order was void because it made no findings of fact; (4) Bandeen was denied a fair and impartial trial; and (5) the proceeding became a nullity when the statute under which the Board was proceeding was repealed.

Bandeen was admitted to the practice of osteopathy in Missouri in 1922 and in 1926, through reciprocity, was licensed to pursue the same profession in Kentucky. At the hearing before the Board, he admitted that he did not hold the degree of Doctor of Medicine; that he had no right to use the professional title of "Doctor of Medicine" or its abbreviation, "M. D."; and that he was not entitled to engage in the general practice of medicine or surgery.

On April 18, 1950, Bandeen received a letter from the secretary of the Board notifying him to "show cause" within thirty days why his license should not be revoked because of "grossly unprofessional or dishonest conduct of a character likely to deceive or defraud the public in the treatment of cancer and tuberculosis." This proceeding was pitched under KRS 311.110(4), then in force. Bandeen appeared and filed special and general demurrers on the grounds that no complaint had been entered against him and that he had not been furnished with a copy of any complaint that might have been filed against him pursuant to KRS 311.120(1), which was in effect at the time. Thereupon this meeting of the Board was adjourned and thereafter the secretary of the Board, by a communication dated August 4, 1950, notified Bandeen of a hearing to be held before the Board on

September 7, 1950, and attached a copy of a complaint setting out certain specific charges. These charges were, briefly stated, using medicines of doubtful value, imposing excessive charges, making unjustified promises of cure and deceiving patients about their physical condition, following unorthodox diagnostic procedures, employing scare tactics, and failing to provide for adequate relief of pain. A list of six patients and their dates of treatment, with reference to whom the charges were made, was appended. This complaint was demurred to on the ground the the notice did not give sufficient information as to the time and place of the treatments and as to the parties involved. The demurrer was overruled.

 Bandeen's challenge to the jurisdiction of the Board is bottomed upon the contention that it initiated the instant proceeding against him in its name, whereas it is maintained the correct mode of preferring charges against him was by the verified complaint of some individual. This position is untenable. There was nothing in the applicable statutes in effect in 1950 which prohibited the Board from instituting a revocation proceeding upon the basis of information received by it or by any member thereof. It is well established that in the absence of express statutory restraints an administrative agency may inaugurate investigations and hearings of the character under discussion on its own motion. This is one of the distinctive functions of such agencies which sets them apart from the courts. See 42 Am.Jur., Public Administrative Law, Sec. 31, p. 323; Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656, 662.

 The second ground alleged as error is that the evidence does not sustain the Board's order of revocation. This assertion requires an examination of the evidence. However, before we give a summary of the proof, attention should be called to the fact that an exhibit in the record shows Bandeen was listed in the classified ad section of the Louisville telephone directory as a "Doctor of Medicine". The secretary of the Board stated that demands had been repeatedly made upon Bandeen, beginning as far back as 1944, to discontinue this type of listing, but that such demands were not acceded to until shortly before the hearing of his case by the Board. Bandeen frankly admitted at the hearing he had no right to advertise as a "Doctor of Medicine". We believe his action in holding himself out in the manner we have indicated, knowing full well he was practicing a deception upon the public in respect to his professional status, constituted an unethical act tantamount to fraud. See 41 Am.Jur., Physicians and Surgeons, Sec. 51, p. 178.

The label of "miracle doctor" had become attached to Bandeen in the community where he practiced. He denied he ever referred to himself in such fashion, but he freely conceded he was recognized for his outstanding curative powers and indicated this reputation was justified because of the "marvelous recoveries" he had effected by the type of treatments he employed. He administered the so-called "Koch shots" to patients he diagnosed to have cancer. His charges for these shots ranged from $100 to $150. He testified he procured the substance he injected into his patients from an organization or cult known as the Christian Medical Research League of Detroit, Michigan, at a cost of $25 per shot. When one of the Board members inquired whether his charges for the shots were not out of proportion to their cost, he claimed every treatment also included an examination of the "eyes, ears, nose, throat, heart, lungs, rectum, nerves, teeth, tonsils, etc." He declared he was aware the "Koch shots" had been fully investigated by the American Medical Association and had not been recommended by it as a curative agent. He also stated he was virtually the only practitioner in Kentucky who subscribed to this method of treatment.

One of Bandeen's patients, Mary Frances Rucker, was pronounced by him to have a cancerous tumor and, according to her husband, Everett Rucker, she grew worse and Bandeen said he could cure her and gave her three "Koch shots", charging $100 for each. When Bandeen went to see her he made a remark in the presence of both Rucker and his wife that a rubber sheet should be placed under the latter because "she's going to burst wide open and die right now." Rucker stated his wife was in great pain and Bandeen did nothing to relieve her. He also testified Bandeen's statement so frightened his wife that she "went crazy as a bedbug" and had to be later confined in the Central State Hospital as a lunatic where she remained about two months. She died some sixteen months later.

Lue Limp testified Bandeen performed hemorrhoid surgery upon her, charging her $150 for the operation. He told her "cancer will be your trouble later", and offered to give her a "Koch shot" for an additional $150. She said this diagnosis induced her to submit to an injection. Subsequently she went to Doctor Henry Ashman who operated on her for hemorrhoids and advised her she did not have cancer.

John Fred Herms, who had been twice operated upon for a cancerous condition in the throat and had been informed he did not have long to live, went to Bandeen for treatment when he heard he was a "miracle doctor". Bandeen said he considered Herm's case hopeless. Nevertheless, he administered a shot to Herms. The latter's mother testified that while he was suffering excruciating pains Bandeen gave him some tablets which he enjoined him not to take unless he had "dying pains". Herms died five days later.

Bandeen took the stand and testified in his own behalf and introduced only one witness, his office nurse. The tenor of his testimony, as a whole, was to justify his curative methods.

On December 13, 1951, upon the basis of the evidence recited, the Board found that Bandeen, "while a licentiate of said Board, engaged in acts and conduct that were grossly unprofessional and dishonorable and of such character that they were likely to, and did, deceive and defraud the public and certain patients and persons, within the meaning of KRS 311.110(4)."

The general rule is that, in the absence of a statutory direction (and there is no direction in our law), the findings of fact of an administrative board, such as the State Board of Health, are conclusive upon a reviewing court, if such are supported by substantial evidence, and even if such are based upon conflicting evidence. See 42 Am.Jur., Public Administrative Law, Sec. 211, p. 626. Such findings of fact should not be disturbed where the board had jurisdiction of the case and acted honestly and impartially, and not arbitrarily. See 70 C.J.S., Physicians and Surgeons, § 18, p. 904. See also Board of Health of Covington v. Kollman, 156 Ky. 351, 160 S.W. 1052, 49 L.R.A.,N.S., 354.

Uncontroverted testimony was developed to the effect that Bandeen had paid for a listing in the Louisville telephone directory as a "Doctor of Medicine", although he did not have this professional status, and had in 1944, and several times thereafter, been warned by the Board to have the listing removed, which warning he ignored until this proceeding was begun. He also gave the so-called "Koch shots" for cancer treatments, with knowledge that after investigation the American Medical Association had branded the use of such a substance valueless therapeutically. It was brought out that Bandeen charged $100 to $150 for each "Koch shot" while the cost of each shot was only $25. He gave conflicting testimony as to what the services for each charge involved. It was stated Bandeen refused to relieve pain on two occasions and employed methods that terrorized on another. These last two

assertions were denied by him. There was proof that Bandeen claimed in several instances that "Koch shots" would cure cancer. He refuted this testimony in part.

■ Considering the evidence which was not controverted and that which the Board could have believed, it could only with difficulty be held that its order was not supported by any substantial evidence. Nor can it be said its decision was not an honest and impartial one. In Forman v. State Board of Health, 157 Ky. 123, 162 S.W. 796, 799, this language appears: "Whether the physician's acts were sincere or fraudulent and done for the purpose of defrauding the public is a question to be decided by the board on all the facts."

■ The testimony introduced before the Board concerned patients diagnosed and treated by Bandeen as cancer cases. It is common knowledge that medical science has as yet discovered no drug that will cure this disease in its advanced stage. Despite this fact, it will be recalled Bandeen gave assurance, according to the testimony of Everett Rucker, that he could heal the latter's wife who was suffering from cancer in an aggravated form. He gave her three "Koch shots" at a cost of $100 per shot. Her illness was so advanced it should have been apparent to Bandeen that he could do nothing to save her life. It has been held that the acceptance of money upon the promise or representation of being able to cure a disease regarded by the consensus of medical opinion as incurable constitutes such unprofessional and dishonorable conduct as would warrant a license revocation. See Freeman v. State Medical Examiners, 54 Okl. 531, 154 P. 56, L.R.A.1916D, 436.

■ It is next argued the order was a nullity because it did not set out any findings of fact. The statute under which the proceeding was instituted and conducted did not require that such be done. Written special findings by administrative agencies are not necessary in order to meet due process of law requisites. See Davis on Administrative Law (1951 Ed.), pp. 524 and 526. It has been held that a revocation of license for "unprofessional conduct" was valid, although it was not supported by a written particularization of evidentiary facts, since the record itself supplied these matters. See Du Vall v. Board of Medical Examiners of Arizona, 49 Ariz. 329, 66 P.2d 1026. In Barron v. Board of Dental Examiners of State of California, 44 Cal.App.2d 790, 113 P.2d 247, 250, a finding that one of its licensees was "'guilty as charged in said accusation'" was sufficient to support an order of license revocation; and in State ex rel. Ball v. State Board of Health, 325 Mo. 41, 26 S.W.2d 773, an order to revoke a license was adjudged adequate, even though the record did not recite that the licensee stood convicted of the offense charged.

Bandeen's insistence that he was not accorded a fair and impartial trial is based upon a twofold argument: (a) That the secretary of the Board was antagonistic toward him at the hearing which prevented his receiving neutral treatment and that this officer was allowed to read a report he had compiled concerning Bandeen's alleged professional misconduct; and (b) that in September, 1951, over a year after the hearing, counsel for the Board filed with it a copy of an opinion and an order of the Federal Trade Commission in the Matter of Koch Laboratories, Inc., etc., as respondents. Briefly stated, this opinion held that the so-called "Koch shots" in their various compounds have no therapeutic value in cancer or tuberculosis treatment, nor any beneficial effects as healing drugs, and, furthermore, that they have adverse effects on some persons when employed as a curative agent; and the order directed the respondents to cease disseminating these preparations by any means through the channels of commerce. The Federal Trade Commission opinion was later affirmed by the United States Court of Appeals for the Sixth Circuit. See Koch v. Federal Trade Commission, 6 Cir., 206 F.2d

311. Bandeen asserts he was not given an opportunity to produce counter evidence on the report and on the opinion.

It is true the secretary of the Board did much of the questioning of Bandeen, but this was not improper under the circumstances. Also, during the hearing, the secretary was permitted to give general information surrounding the complaints against Bandeen over the years. Bandeen argues this was prejudicial and denied him a fair hearing. It is patent the secretary's statements were pure hearsay and not competent for any purpose. However, Bandeen was given ample opportunity to introduce rebuttal evidence. Proceedings before administrative boards are informal and a wide latitude is allowed in taking proof and the technical rules of procedure are not ordinarily enforced. See Goodrich v. Selligman, 298 Ky. 863, 183 S.W.2d 625. The secretary abstained from voting to revoke Bandeen's license. Furthermore, there was ample evidence other than that contained in the report of the secretary to sustain the Board's order. As to Bandeen's theory that he was dealt a wrong because the Board relied upon the Federal Trade Commission opinion in arriving at the conclusion it reached, our answer to that is the opinion was a finding of law, and not one of fact, hence the Board could take judicial notice of it. Especially is this true since the Federal Trade Commission opinion was later affirmed by the United States Court of Appeals for the Sixth Circuit.

KRS 311.120(3) before its repeal, provided that a licensee whose license had been revoked by the Board "may appeal to the Governor, who may affirm or overrule the decision of the board." Bandeen appealed to the Governor after the Board entered its order on December 13, 1951. While the matter was pending before the Governor, the General Assembly at its 1952 session passed a comprehensive Act relative to physicians, osteopaths and chiropodists, now KRS Chapter 311, which became effective June 19, 1952, and which repealed KRS 311.110, 1948 Ed. By KRS 311.595(1), 1953 Ed., the Board retained its authority to revoke licenses on an expanded number of grounds, and these included the four listed under the repealed statute. The new enactment deleted the right of an appeal to the Governor, set forth in KRS 311.120(3), a part of the old Act. However, the Governor nevertheless reviewed the proceeding before the Board and upheld it.

Bandeen earnestly insists that the Board's order was voided while his appeal was pending before the Governor, since KRS 311.120(3), 1948 Ed. was repealed without a saving clause. We do not agree. The simultaneous repeal and the reenactment of substantially the same statute, or of portions of it, do not at common law work a repeal of the former act, but the substituted statute is construed as a continuation of the original provisions. Jones v. Kentucky State Board of Dental Examiners, 291 Ky. 136, 163 S.W.2d 297. The jurisdiction of the Board was not disturbed, and the appellate jurisdiction was simply transferred from the Governor to the Jefferson Circuit Court. Since the new legislation did not impair the previously existing right, nor deny a remedy for its enforcement, but only modified the proceedings while providing a similar remedy, the jurisdiction continues under the forms directed by the repealing act, in so far as the two acts differ. Kingan & Co. v. Ossam, 75 Ind.App. 548, 121 N.E. 289.

It would seem that, upon repeal of the section conferring jurisdiction upon the Governor to pass upon an appeal of this kind, Bandeen should have appealed to the Jefferson Circuit Court, the only body with jurisdiction to hear the appeal under the existing law, and that, failing to follow this designated procedural step, he should be denied injunctive relief for this reason also.

Wherefore, the judgment is affirmed.