The Honorable W.J. "Bill" McCuen Secretary of State State Capitol Little Rock, Arkansas 72201
Dear Mr. McCuen:
This is in response to your request for an opinion on several questions concerning the authority of the Arkansas Ethics Commission created at A.C.A. § 7-6-217 (Cum. Supp. 1991). Your questions will be set out below and answered in the order in which they were posed.
Your first question involves the approval of the various forms required to be filed under the provisions of A.C.A. §§7-6-201—218 and 21-8-401—803 (Cum. Supp. 1991). Specifically, you note that A.C.A. § 7-6-217(h)(6) gives the Arkansas Ethics Commission the authority to approve forms prepared by the Secretary of State for compliance with these subchapters. Seealso, A.C.A. § 21-8-606 (1). You note that your office prepared such forms and forwarded them to the Commission for approval, but the Commission listed several additions which it seeks to add to the forms. In your opinion, these additions require more disclosure than is required by the statutes, and thus your first question is as follows:
 Does the Commission have the authority to require candidates and other persons required to file such documents to disclose the superfluous information? What penalty, if any, could lawfully be imposed upon a person who refused to disclose this additional information?
As you have noted, the Commission has the specific statutory authority to approve the forms created for compliance with these subchapters. Their authority in this regard is therefore paramount to the judgment of any other executive official, including the judgment of your office as well as the judgment of the Attorney General. In addition, the Commission is the agency charged with the duty to enforce the relevant statutes, and, as such, its interpretation of these statutes will be afforded great deference by the courts. Arkansas Department of Human Servicesv. Green Acres Nursing Homes, Inc., 296 Ark. 475, 757 S.W.2d 563
(1988). It has also been held that if the agency's construction is reasonable, courts must respect it, especially if the interpretation or construction enhances the general purposes and policies underlying the legislation. Murphy Oil Corp. v.Hickel, 439 F.2d 417 (8th Cir. 1971). The question you have posed will require a determination of whether each proposed addition to the form is, under law, "superfluous," and indeed, whether it is outside the Commission's authority to construe the statutes as requiring disclosure of these matters. This decision will ultimately have to be made by a court faced with the question. I will, however, in a merely advisory fashion, discuss and reach legal judgments as regards the individual additions requested by the Ethics Commission to be added to the various forms.
The first requested addition concerns the "Lobbyist Registration Form" and requested the inclusion of a space on the form to list the address at which records required by law to be maintained by the lobbyist may be inspected. There are no specific requirements in the statute as to what is to be included in the registration of a lobbyist. See A.C.A. § 21-8-601 (Cum. Supp. 1991). Section21-8-605 (Cum. Supp. 1991), however, requires a registered lobbyist to maintain and preserve, for a period of three years, all documents necessary to substantiate the required financial reports. It is my opinion that because A.C.A. § 21-8-605 mandates the maintenance of these records, it is not outside the authority of the Commission to require the address of their location in order to assure compliance with A.C.A. § 21-8-605. It is possible, at some point, that these documents could be subject to subpoena of the Commission (A.C.A. § 7-6-217(h)(3)) and, in my opinion, it is not outside the Commission's authority to require disclosure of their location.
The second and third suggested additions involve the "Lobbyist Activity Report Form." The first suggests a space on the form for a single "check-off" to signal that the lobbyist has engaged in no lobbying activity during the previous reporting period. It is my opinion that this addition is within the Commission's authority. The second suggested addition to this form would require a space for the lobbyist to report the date, candidate, or state employee on whom itemized expenditures were made during the reporting period. It should be noted that A.C.A. §21-8-604(2)(B) and (C) (Cum. Supp. 1991), require this information to the extent the expenditures were made on behalf of a "public servant," "groups of public servants" or "governmental bodies." It appears that detail of expenditures made on behalf of "candidates," as indicated in the proposed addition, are not required on the "Lobbyist Activity Report Form."
The next suggested additions are to the "Campaign Contribution and Expenditure Report," the first of which suggests a space and instruction to candidates to report any funds claimed as "carry over" from the past election. It is my opinion that it is in all probability within the Commission's authority to require this information under A.C.A. §§ 7-6-207(b)(1)(H), which requires the disclosure of the "current surplus or debt of campaign funds," and 7-6-207(b)(1)(B), which requires disclosure of contributions of over $100, even if by the candidate himself. Under the former provision, at least in future years, the amount of the surplus from the previous election will have been reported on the candidate's final report filed from the previous election. Any portion of this amount which the candidate chooses to "carry over" into the next election becomes a part of the "current surplus or debt of campaign funds" for the current election and will also be included on the "Campaign Contribution and Expenditure Form" as a campaign contribution. Such an amount is a "contribution" to the present campaign. See A.C.A. §§7-6-207(b)(1)(B) and 7-6-201(2). Although the contribution which is attributable to "carry over" is not required by the statutes to be reported with specificity, it is required to be reported as a campaign "contribution" on the "Campaign Contribution and Expenditure Report" if over $100 dollars. See A.C.A §7-6-207(b)(1)(B).
Although the issue is not perfectly clear, it is my opinion that the judgment of the Ethics Commission, which is charged by law with administering the provisions of the law, would be accorded some weight by a court, as noted above, and thus I cannot conclude, absent a judicial determination, that the Ethics Commission has exceeded its authority in requiring the "carry over" contribution to be reported separately.
The second suggested inclusion on the "Campaign Contribution and Expenditure Report" is a space for the candidate to list the names of the campaign chairman, treasurer, and/or other principal officers, and addresses and telephone numbers for each. It is my opinion that this information is not required to be reported by statute unless these individuals are paid. See A.C.A. §7-6-207(b)(1)(F).
The third suggested inclusion for the "Campaign Contribution and Expenditure Report" is a space to list loans taken out by the candidate, along with the name and address of the person or institution making the loan. To the extent the loans are made by a "financial institution," the reporting of the loan, as a campaign contribution, is required by A.C.A. § 7-6-210. Although this statute does not require the address of the financial institution, it is my opinion that it is likely within the authority of the Commission to require this information. To the extent the loans are made by individuals, they are reportable as campaign contributions by virtue of the definition of a "contribution" which specifically includes "loans." A.C.A. §7-6-201 (2)(A). To the extent these loans exceed one hundred dollars, the name of the "contributor," the principal place of business, employer, and occupation must be reported. A.C.A. §7-6-207(b)(1)(C).
The next suggested addition for the "Campaign Contribution and Expenditure Report" is a space to reveal the address at which records in support of the campaign reports are maintained. It is my opinion that it is probably within the Commission's authority to require this information. Section 7-6-205 requires the maintenance of these records for a period of five years. The records may be made available to the prosecuting attorney. It is not outside the Commission's authority, in my opinion, to require the address of the location of these records to ensure that they are being maintained in compliance with A.C.A. § 7-6-205.
The final suggested inclusion on the "Campaign Contribution and Expenditure Report" involves the final report and suggests the inclusion of the manner of election as to the disposal of surplus campaign funds. The statutes require a candidate to make an election as to the disposition of surplus funds. See A.C.A. §7-6-203(j). This statute requires the candidate to turn over any surplus to the State Treasurer, a political party, or the candidate's contributors (less an amount equal to the yearly salary of the office and amounts required to reimburse the candidate for personal funds or to repay loans made by financial institutions). The statutes do not appear to require any reporting as to the manner of election chosen. As noted previously, however, if the candidate chooses to carry over funds to the next election, they should be included in the "current surplus or debt of campaign funds" for that election and should be reported as a campaign contribution under A.C.A. §7-6-201(b)(1)(B) for that election. It is my opinion, however, that the Commission may have the authority to require the reporting of the manner of election to ensure compliance with A.C.A. § 7-6-203(j); that is, to ensure that the candidate has turned over the balance of funds to an authorized entity or has retained them as authorized under the act. Again, the question is not entirely clear, but it is my opinion that the judgment of the Commission will be given deference in this regard.
The next suggested inclusions involve the "Political Action Committee Report." The first suggested inclusion for this report is a space on which the "date of registration" must be reported. It is my opinion that the Commission has the authority to require this information.
The second suggested inclusion for this report is a space for listing the addresses of interests represented. Section A.C.A. §7-6-215 (b)(2) requires political action committees to disclose on the form the "professional, business, trade, labor, or other interests represented by the committee. . . ." It is my opinion that the Commission, in all likelihood, has the authority to require the address of such interests.
The third suggested inclusion to this report is a space for the listing of names and addresses of contributors, and the amount they contributed in the past year to the political action committee. It is my opinion that although a political action committee is required to maintain this information for a period of two years (A.C.A. § 7-6-215(a)) it is not required to report it on the "Political Action Committee Report."
The fourth suggested inclusion for this form is a space and instruction to list the amount of "carry over" claimed from the past year. It is my opinion that this information is not required by the statutes.
The final suggested inclusion for this report is a direction to list contributions made in opposition to particular candidates or ballot questions and whether the committee made contributions to other "PACS" or committees. It is my opinion that these disclosures are not required by the subchapters in question. Section 7-6-215(b)(3) requires only that the committee report the name of each candidate to whom the committee contributed. It does not require the disclosure of contributions made in opposition to particular candidates, or contributions to other PACS or committees. Additionally, the disclosure of expenditures relating to "ballot questions" is governed by A.C.A. §§ 7-9-401—410, and not A.C.A. §§ 7-6-201—218 or 21-8-401—803, over which the Ethics Commission has jurisdiction.
In general response to your first question then, the question of whether the Commission has authority to require "superfluous" information on the forms will depend, in each instance, on whether the information is indeed "superfluous." This judgment can only be rendered by a court, not by your office. My advisory opinion on the individual questions, however, is set out above. In my opinion penalties could not be imposed upon persons who do not comply with unauthorized requirements. These judgments will be made, ultimately by a court, on a case-by-case basis.
Your second question is as follows:
 I would also like your official opinion concerning the Commission's authority to investigate incidents prior to the creation of the Commission. Do they have the authority to investigate occurrences prior to January 2, 1991, November 6, 1991, the Primary elections of 1991? Do they possess retroactive authority to the 1988 or preceding elections?
This question is not easily answered. It is my opinion, however, after a review of the relevant statutes, principles of statutory construction and principles of constitutional law, that the Commission generally does not have the authority to issue letters of caution or warning in such cases, and that, in certain cases, persons subject to these requirements may not be prosecuted for acts which occurred prior to creation of the Commission. Although there appears to be no prohibition against the Commission "investigating" alleged violations which occurred prior to its creation, the Commission may not impose, or have the prosecutor impose, sanctions for these actions. The "investigation" of such acts would thus appear pointless.
It should be noted initially that cases are legion in Arkansas for the proposition that statutes dealing with matters of substance rather than procedure are presumed to be non-retroactive. See e.g. Huffman v. Dawkins, 273 Ark. 520,622 S.W.2d 159 (1981). A statute will be construed retroactively, however, if the intention of the legislature that a statute be retroactive is expressly declared or necessarily implied from the language used. Myers v. Council Mfg. Corp., 276 F.Supp. 541
(E.D. Ark. 1967); Chism v. Phelps, 228 Ark. 936, 311 S.W.2d 297
(1958). It is in my opinion unclear, under the subchapters in question, whether the legislative intent (as expressed by the electorate) was to authorize the Commission to investigate alleged violations which occurred prior to the creation of the Commission. Even if this was the intent, other constitutional and statutory constraints may prohibit the Commission from taking action in these instances.
Several different factors give rise to this conclusion. First, the subchapters which the Commission is charged with enforcing carry criminal penalties. See A.C.A. §§ 7-6-202 (making willful or knowing noncompliance with the subchapter an unclassified misdemeanor)[1] and 21-8-403 (Cum. Supp. 1991) (making a violation of subchapters four through eight of the chapter a Class A misdemeanor). The Commission has the authority to turn over violations of these subchapters to law enforcement authorities for prosecution as misdemeanors, or it may issue a public letter of caution or warning. A.C.A. § 7-6-218(b)(4)(A) and (B). If the Commission begins an investigation which will ultimately lead to a misdemeanor prosecution, in order to be punished as a misdemeanor, the act must have been punishable as a misdemeanor at the time it was committed, or else an unconstitutional ex post facto law exists. See United States Constitution, art. 1 §§ 9 and 10, and Arkansas Constitution, art. 2, § 17. Ex post facto laws relate to crimes as opposed to civil actions and an "ex post facto" law makes an act criminal which was not criminal at the time it was committed, or declares an offense to be punishable in a manner that it was not punishable at the time it was committed. Southern Kraft Corporation v.Hardin, 205 Ark. 512, 169 S.W.2d 637 (1943). There are two critical elements which must be present for an criminal law to be ex post facto: (1) It must be retrospective, i.e., it must apply to events occurring before its enactment, and (2) it must disadvantage the defendant. Brown v. Lockhart, 288 Ark. 483,707 S.W.2d 304 (1986). Thus, if the act committed is an act which was first prohibited by the new legislation initiated in 1990, along with the creation of the Commission, the Commission cannot instigate an investigation which seeks to culminate in misdemeanor prosecution because to do so might amount to an unconstitutional ex post facto law. Reference to the individual violation in issue should thus be scrutinized for potential ex post facto problems.[2]
Second, even if not prohibited as an ex post facto law, the statute of limitations may act as a bar to an investigation by the Commission of incidents occurring prior to its creation. To the extent, again, that the investigation will end in a misdemeanor prosecution, the statute of limitations for such a prosecution is one year with certain exceptions.[3] See
A.C.A. § 5-1-109(b)(3). Thus, even if the act was prohibited as a misdemeanor at the time is was committed (so as to avoid any ex post facto problems), the statute of limitations may still prohibit its prosecution.
To my knowledge the Commission has not sought thus far to have any violations prosecuted as misdemeanors, and as it was created on January 2, 1991, the one year statute of limitations for acts occurring prior to the creation of the commission has either already run or will expire shortly after the end of this month unless an exception applies.
The above considerations apply in the context of misdemeanor prosecutions. The Commission may also, however, undertake investigations which will culminate only in public letters of caution or warning. In these instances, the prohibitions against ex post facto laws and the running of the statute of limitations discussed above will not apply. Ex post facto considerations apply only in the context of criminal actions. See SouthernKraft Corporation, supra. An administrative disciplinary matter such as the issuing of public letters of caution or warning are not criminal matters and are generally held not within the ambit of ex post facto considerations. See e.g.In re Samuels, 129 Ill. Dec. 43, 126 Ill.2d 509, 535 N.E.2d 808
(1989); Matter of Randall, 640 F.2d 898 (8th Cir. 1981),cert. denied, 454 U.S. 880 (1981); In re Inquiry Concerninga Judge, 357 So.2d 172 (Fla. 1978); Nicholson v. JudicialRetirement and Removal Commission, 562 S.W.2d 306 (Ky. 1978); and In re Sparrow, 338 Mo. 203, 90 S.W.2d 401 (1935). Additionally, as discussed more thoroughly in response to your final question, infra, it is unclear whether any statute of limitations is applicable to the issuance of these letters.
It is my opinion, however, that the Commission's investigation of incidents which occurred prior to the creation of the Commission, and thus prior to the time these actions were made subject to the issuance of a letter of caution or warning would generally be prohibited by the constitutional prohibition against retrospective legislation which disturbs "vested rights" or attaches "new disabilities" with respect to transactions already past. 16A C.J.S. Constitutional Law, § 390. In my opinion the Commission could not issue a letter of caution or warning (a new disability) for an action which occurred at a time when no such disability existed. Such an action would violate constitutional considerations surrounding retroactive legislation.
In response to your second question then, it is my opinion that, generally, the Commission may not constitutionally issue sanctions for violations which occurred prior to the time these sanctions were authorized, that is, prior to the creation of the Commission. Investigation of such matters would thus appear fruitless. Of course, reference to individual fact situations would be necessary to determine to what extent the prohibitions of the ex post facto clauses, statute of limitations, and constitutional prohibitions against retroactive legislation are applicable in given situations.
Your third question is as follows:
 A.C.A. § 7-6-217(h)(2) gives the Commission the authority to investigate alleged violations. A.C.A. § 7-6-218 establishes the procedure for citizens to file complaints alleging violations and the steps the commission must take once an investigation begins. Does Arkansas law give the Commission the authority to begin an investigation without first receiving ". . . a complaint stating facts constituting an alleged violation signed under penalty of perjury . . .?"
In my opinion the answer to this question is "yes."
As you have noted, two separate provisions address the Commission's authority to investigate alleged violations of A.C.A. §§ 7-6-201—218, and 21-8-401—803. The first is A.C.A. §7-6-217(h)(2), which appears in the statute which creates the Ethics Commission and outlines its statutory authority. It provides that the Commission shall have the authority to: "investigate alleged violations of this subchapter and of subchapter four-eight of Title 21, Chapter 8 . . . and render findings and disciplinary action thereon." The second is A.C.A. §7-6-218(b)(1) which appears in a statute entitled "Citizen complaints," and which provides that upon a complaint "stating facts constituting an alleged violation signed under penalty of perjury . . . the Commission shall investigate the alleged violation. . . ." (Emphasis added.) It is my opinion, from a reading of both of these provisions together, that they do not prohibit the Commission from undertaking investigations without the filing of a citizen complaint. Section 7-6-218, mandates
that the Commission investigate alleged violations where a complaint stating the facts constituting an alleged violation has been filed under penalty of perjury. The statutes thus require
the Commission to investigate where a complaint has been filed, but do not preclude, in my opinion, an investigation on the Commission's own motion. Section 7-6-217(h)(2) appears to stand as separate authority for such investigations. This conclusion is buttressed by the following language from Bandeen v. Howard,299 S.W.2d 249 (Ky. 1957), cert. denied, 355 U.S. 813 (1957),overruled on other grounds, Pearl v. Marshall, 491 S.W.2d 837
(Ky. 1973):
 Bandeen's challenge to the jurisdiction of the Board is bottomed upon the contention that it initiated the instant proceeding against him in its name, whereas it is maintained the correct mode of preferring charges against him was by the verified complaint of some individual. This position is untenable. There was nothing in the applicable statutes in effect in 1950 which prohibited the Board from instituting a revocation proceeding upon the basis of information received by it or by any member thereof. It is well established that in the absence of express statutory restraints an administrative agency may inaugurate investigations and hearings of the character under discussion on its own motion. This is one of the distinctive functions of such agencies which sets them apart from the courts. See 42 Am. Jur., Public Administrative Law, Sec. 31, p. 323; Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134. . . .
299 S.W.2d at 251. See also Board of Pesticide Control v.Swan Aviation, 12 Ariz. App. 504, 472 P.2d at 118 (1970);Salway v. Alger, 321 Mich. 211, 32 N.W.2d 505 (1948), and 73 C.J.S. Public Administrative Law and Procedure § 79 at p. 560.
It is therefore my opinion that the answer to your third question is "yes."
Your fourth question, in the event we determine that the Commission does have the power to instigate investigations on its own motion, is whether the Commission is required to notify the person under investigation as required by A.C.A. § 7-6-218
(b)(1). For example, you state, the director of the Commission has requested, in a blanket fashion, copies of filed campaign finance documents not only from your office but from the offices of the county clerks. It has also asked county clerks to provide names of candidates who have failed to file such documents. You ask whether, in my opinion, this action constitutes an investigation and, if so, whether the Commission should notify these people that they are investigating them.
It is my opinion that the conduct you suggest does not amount to an investigation. The relevant documents are public records.See A.C.A. §§ 7-6-214, 21-8-603(b), and 21-8-606(3). The Director of the Commission has a right to access them as does any member of the public. Additionally, the Secretary of State is required by statute to provide, within thirty days, the names of all candidates who have failed to file reports under the campaign reporting statutes. A.C.A. § 7-6-207(d)(2). It is my opinion that this action by the Commission thus does not constitute an investigation.
In other cases (cases in which the Commission actually initiates an investigation), the answer to the question concerning whether notice is required is unclear, but it is my opinion that the answer is, in all likelihood, that notice must be given. Although I have concluded above that the Commission has authority independent of A.C.A. § 7-6-218 to undertake investigations, it is my opinion that the legislative intent was to accord candidates the procedural safeguards, including notice, set out in A.C.A. § 7-6-218.
Your fifth question concerns the "time frame" within which either a citizen may file a complaint or the Commission on its own initiative may begin an investigation concerning a particular incident. As noted previously, if the investigation is to end in the prosecution of an offense as a misdemeanor, the relevant statute of limitations is one year, unless an exception applies.See A.C.A. § 5-1-109 (Cum. Supp. 1991). Otherwise, there does not appear to be any statute of limitations in the act, and it is unclear whether the "catch-all" five-year statute of limitation found at A.C.A. § 16-56-115 is applicable to this type of administrative proceeding, as it may not be classified as an "action."
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] Section 5-1-107(a)(3) of the Arkansas Code declares any offense which is not designated as a felony, but upon which a sentence of imprisonment is authorized upon conviction, to be a misdemeanor. Section 5-1-107(c) provides that any misdemeanor not a part of the criminal code which prescribes limitations on a sentence of imprisonment is an "unclassified misdemeanor."
[2] Most provisions of Initiated Act 1 of 1990 became effective before the actual creation of the Commission on January 2, 1991. Many became effective on December 7, 1990, and some on November 7, 1990. See A.C.A. § 7-6-201n. In addition, many provisions of the subchapters the Commission is charged with enforcing were effective and punishable as misdemeanors prior to the creation of the Commission. See A.C.A. §§ 7-6-202—214, 21-8-403, and subchapters 4-8 of Title 21. Ex post facto concerns will thus not be applicable if this is the case as regards a particular violation; that is, if it was punishable as a misdemeanor at the time it was committed. Other legal restrictions, however, as will be discussed herein, may limit the authority of the Commission to issue sanctions in these cases.
[3] Section 5-1-109(c)(1) (Cum. Supp. 1991) creates two exceptions to the one-year limit for: (1)offenses involving either fraud or breach of a fiduciary obligation which may be prosecuted within one year after the offense is discovered, or should reasonably have been discovered, and (2) for "felonious" conduct in office by a public servant, in which case the limitation is five years after the public servant leaves office or five years after the offense is discovered, or reasonably should have been discovered, but in no event longer than ten years after the act was committed.